## WARD *v.* DAVIS.

1. VENDOR AND PURCHASER — OFFER TO SELL —WITHDRAWAL OF OFFER—SUFFICIENCY.

   A written offer to sell and convey land was not withdrawn by the giving of a second option, of which the holder of the first offer had no knowledge, which by its terms did not bind the vendor to convey except upon or after " the expiration of any option, if such option exists on some part of said lands."

2. SAME—SPECIFIC PERFORMANCE.

   On a bill for specific performance of a land contract, evidence examined, and *held*, that a written offer to sell and convey was withdrawn before acceptance by complainant.

Appeal from Washtenaw; Kinne, J. Submitted June 16, 1908. (Docket No. 64.) Decided October 5, 1908.

Bill by Charles A. Ward against Samuel O. Davis, Katherine Davis, and Robert M. Grindley for the specific performance of a land contract. From a decree for complainant, defendants appeal. Reversed, and bill dismissed.

*John L. Duffy* (*J. F. Lawrence*, of counsel), for complainant.

*Arthur Brown*, for defendants Davis.

*A. J. Sawyer & Son*, for defendant Grindley.

OSTRANDER, J.   The meritorious question is whether a written offer to sell and convey land was accepted before it was withdrawn.   The offer was in the following form :

"This agreement made this 8th day of March, 1905, between Samuel O. Davis and Katherine Davis, of the first part, and Charles A. Ward of the second part, witnesseth : That whereas the party of the second part proposes to erect a dam on the Huron river which will overflow the lands here described and now the property of the party of the first part.   Therefore the said party of the first part for and in consideration of the sum of one dollar to him in hand paid, the receipt whereof is hereby acknowledged, hereby contracts and agrees to sell to the said party of the second part all those certain parts or parcels of land situated in the township of Scio, Washtenaw county, Michigan, more fully described as follows : South part of east one-half northeast fr. one-fourth section four, tp. 2 south, range five east.

"The said party of the first part agrees to execute and deliver to the said party of the second part, or his assigns, a warranty deed for the said lands; provided and upon the consideration, nevertheless, that the said party of the second part, his heirs or assigns, pay to party of the first part, for the said lands, the sum of two thousand five hundred dollars for the lands, and the said sum to be paid upon the execution of the aforesaid deed and on or before January 1st, 1906, and in default of the payment of the sum by the said party of the second part, or his assigns, on or before the first day of January, 1906, then this agreement shall be null and void.

"It is intended that the land covered by this option lies between a line drawn across the south end of the tract from the land of A. Marsh to the land of Benjamin Waite, at the foot of the bluff on said lands and the bank of Huron river.

"First party has right to reserve any land in said tract not flooded at proportionate rate.

"First party reserves right to wood for farm for 1905 and 1906.

"It is understood that this option covers about 33 acres, more or less, of low ground along Huron river.

             "SAMUEL O. DAVIS.
             "KATHERINE DAVIS."

It was withdrawn December 23, 1905. No consideration was, in fact, paid for the offer. It appears that on November 25, 1905, the owners, for a consideration, gave another option for the purchase of the land in question and other land. This option by its terms did not bind the vendors to convey except upon or after "the expiration of any option, if such option exists on some part of said lands." Complainant had no notice or knowledge of this second offer to sell. We affirm the conclusion that the giving of this second offer or option did not withdraw the one in question here.

The parties do not agree concerning the acts and statements which complainant claims occurred, and which are relied upon as evidence of an acceptance of the offer to sell. It is unnecessary to determine disputed facts, because, if we accept as true the testimony of complainant's witnesses, it does not appear that the option holder ever bound himself to buy the land. The existence of a contract is a question independent of circumstances which may excuse its performance or postpone or modify the agreed manner of its performance. In this case there was and could be no contract until the complainant bound himself to take the deed and pay the price, and this required, at the least, that he announce to the owners an unconditional and unequivocal acceptance of the offer. The learned trial judge found:

"On December 12, 1905, the complainant visited the defendants at their home, and sought an extension of the time named in the option. This the defendants declined to give, saying that they had an opportunity to sell their entire farm, and that, therefore, the complainant must pay for the land. The complainant thereupon announced that he was prepared to pay for the land and asked Mr. Davis for the abstract."

He was of the opinion that—

"A valid, binding contract was then and there created. The complainant accepted the offer of the defendants be-

fore withdrawal and within the terms of the option.  If the complainant had made his offer conditioned upon the furnishing of an abstract, the case would be different. All that he did was to ask the defendants for an abstract. He had no right to demand it, and they were at liberty to have refused it.  It probably at that time seemed to both parties that it was the usual and proper thing to do, inasmuch as the option called for a warranty deed."

In addition, he found many evidences of want of candor and fair dealing on the part of defendants Davis, in the facts that they did not acquaint complainant with the outstanding option, did not object to furnishing an abstract, did not earlier withdraw the offer to sell, avoided a meeting with complainant after the offer was withdrawn, all of which, he supposes, led complainant to delay.  And he concludes that "the strict technical principles which often obtain in cases of this nature should  *  *  *  yield to the logic of right and justice."

It is conceded by counsel for the appellee that, if there was no consideration for the offer, it is a mere offer to sell, subject to be withdrawn at any time before acceptance (*Wilcox* v. *Cline*, 70 Mich. 517), and that, if the offer was not unconditionally accepted before withdrawal, complainant has no rights to be protected.  We shall not set out the testimony.  We are impressed that the representatives of complainant entertained no idea of an acceptance of the offer distinct from the delivery of the deed and the payment of the purchase price.  Whether they did or did not, we are satisfied that they intended neither to make a contract—to bind themselves in any manner—nor to complete the sale until they had examined an abstract, which they demanded.  In reaching this conclusion, we assume that a merchantable title was intended to be offered by the owners and expected by the complainant, and also have in mind the fact that it is usual to consult an abstract of title before purchasing land. What we find is that the demand for an abstract was not an incident accompanying performance of a contract al-

ready made, but that its production and complainant's satisfaction with the title which it disclosed were, and were understood to be, conditions interposed by them between the offer and its acceptance. These representatives of complainant claim that upon the occasion referred to they were prepared to draw a check against funds for the purchase money, and had in their possession a deed of the land wholly or partly prepared. They expected, they say, if an extension was refused, to close the matter. They also say that one of the owners had before then stated that he had an abstract. (It appears that the defendants Davis are husband and wife, and owned the land jointly.) This they asked him to produce. Upon examining his papers, it was found that he had none, or, if any, an imperfect one. They undertook, with the owners' assent, to procure one. With this the interview was concluded. No deed was made, produced, or demanded, no money or check for money tendered or exhibited to the owners. Neither expressly nor by necessary or reasonable implication from what was then said were the owners told that the offer was accepted. It is probable that the owners, having given another option, preferred that the complainant should not accept the offer made to him. They rendered no assistance beyond looking for the abstract, and offered no suggestions. They did not withdraw their offer to sell until after another interview between Mr. Davis and complainant's representatives on December 20th, at which he refused to produce or to tell the place of deposit of the new abstract. At this interview there was no demand for a deed, no tender or payment of money. The representatives of complainant stated, in substance, that the time was short; that they were anxious to close the matter; that they wanted to see the abstract. What was said—and not said—at this interview deepens the impression, already announced, of what was intended to be, and was, done at the earlier interview.

154 MICH.—27.

We are of opinion that the case must be disposed of upon the facts in favor of appellants. The decree is reversed, and the bill dismissed, with costs of both courts to defendants.

MONTGOMERY, HOOKER, MOORE, and McALVAY, JJ., concurred.