Alford v. Wilson, &c.

Case 89—PETITION EQUITY—May 8.

# Alford v. Wilson, &c.

APPEAL FROM FAYETTE CIRCUIT COURT.

STATUTE OF FRAUDS—SUFFICIENCY OF MEMORANDUM. — A writing signed by defendants authorizing a firm of real estate brokers to offer plaintiff a named sum for a city lot, specifically described, is equivalent to a written offer by defendants themselves to plaintiff, and the plaintiff having written at the bottom of the instrument his acceptance of the offer, the two writings together constitute a sufficient memorandum to satisfy the requirements of the Statute of Frauds. And the acceptance being unconditional, it is not material that it was never delivered to the defendants or to any one for them.

BRECKINRIDGE & SHELBY FOR APPELLANT.

1. To satisfy the requirements of the Statute of Frauds, it is not necessary that the *contract* itself between the parties be reduced to writing, but it is sufficient if its terms can be ascertained from some *note* or *memorandum* which is authenticated by the signature of the party to be charged. (Lawson on Contracts, sec. 77; 8 Am. & Eng. Ency. of Law, 711; Ellis v. Deadman, 4 Bibb, 467; Kleeman v. Collins, 9 Bush, 467; Drury v. Young, 42 Am. Rep., 343; Browne on Stat. of Frauds, sec. 351.)

Nor is it necessary that both parties shall sign the memorandum, the signature of the one against whom it is to be enforced being all that is required. (Benjamin on Sales, p. 174; 8 Am. & Eng. Ency. of Law, 718; 2 Kent, 510; 1 Sugden on Vendors, chap. 4, sec. 3, subsec. 2; Browne on Stat. of Frauds, secs. 365-6.)

The memorandum need not show that any agreement has actually been made, but a mere offer or proposal, signed by the party making it and accepted, even verbally, by the other, is sufficient. (8 Am. & Eng. Ency. of Law, p. 711, notes 2 and 4; Benjamin on Sales, p. 172; Pollock on Contracts, p. 145.)

2. When the memorandum is evidence of an existing contract previously made by the parties, no "delivery" of it, in the sense in which that word is used in respect of deeds, is necessary, for the writing is not the substantive act or thing itself, as is a deed, but only the means by which the substantive act—the making of the contract—is shown to have been done. (Drury v. Young, 42 Am. Rep., 344; Townsend v. Hargraves, 118 Mass., 325; 8 Am. & Eng. Ency. of Law, 715.)

Newburger v. Adams, 92 Ky., 27, distinguished.

3. Where one executes a writing authorizing another as his agent to

Alford v. Wilson, &c.

make to a third person therein designated an offer for property, such writing, when submitted by the agent to such person and by the latter acted upon, is the direct offer of the maker of the writing.

J. R. MORTON AND THORNTON & KERR FOR APPELLEES.

1. A contract for the purchase of real estate will not be enforced unless it is mutual and binding on both parties. (Usher's Ex'or v. Flood, 83 Ky., 552.)

2. The paper accepted by the plaintiff does not constitute a contract enforceable under the Statute of Frauds, because it is not in terms an offer by the defendants to the plaintiff, but is simply an authority to Stedman & Bowman authorizing them to make an offer to the plaintiff.

3. The writing signed by plaintiff purporting to be an acceptance of the offer of defendants should have been delivered to defendants or to some-one authorized by them to receive the same, in order to constitute a contract under the statute mutual and binding on both parties. (New-burger v. Adams, 92 Ky., 27.)

JUDGE HAZELRIGG DELIVERED THE OPINION OF THE COURT.

The question on this appeal is the sufficiency of a petition in equity, filed by the appellant for a specific execution of a contract alleged to be evidenced by the following writings:

LEXINGTON, KY., March 2, 1893.

We hereby authorize Stedman & Bowman to offer M. C. Alford thirteen thousand six hundred and fifty dollars ($13,650.00) for his lot on North Broadway, and fronting one hundred and thirty (130) feet on said Broadway and running back to an alley. Said lot is bounded generally, on the east by Broadway, on the north by Armstrong, on the south by Fayette Park avenue.

The payments on said lot shall be one-third cash, and the balance in two equal payments, due, respectively, in one and two years from date of transfer, notes to bear six per cent interest. A good and sufficient deed to said lot to be furnished upon the payment of the purchase price.

HALLIE WILSON,
JAMES D. WILSON.

I hereby accept the above offer.

                                    M. C. Alford.

* The averments of the petition are that upon the execution of the foregoing writing by the Wilsons, Stedman & Bowman, who were real estate brokers, made to the appellant the offer authorized by it, and presented the writing to him, and he thereupon accepted the offer, and in evidence of it wrote his acceptance at the bottom of the instrument; and that repeatedly since then he has offered to perform all the conditions of the agreement on his part and to make appellees a good and sufficient deed of general warranty, but they have refused to accept it, etc.

The chancellor held that the two writings did not constitute either a written contract or memorandum of a contract, and therefore the action was not maintainable by reason of our Statute of Frauds. It was conceded, however, that if the writing given to the brokers could be held under the facts presented in the case as being equivalent to a written offer by the Wilsons, then the case for the plaintiff was complete, and a concise, specific contract for the purchase of the land was made out. With great respect for the argument of the chancellor, we think this is precisely what the writing was intended to be, and in fact was—an offer by the Wilsons, through their brokers, to Alford. Even if we admit a discretionary power on the part of the brokers to make or not make the offer, yet they made it—in parol if we so please to consider it—but, yet, in the written terms dictated by the would-be purchasers.

This writing must be regarded as the offer of the Wilsons. Not merely the "equivalent," but the very offer to be presented to the vendor, and for what must we say

it was so offered? Certainly, for acceptance or rejection; and at the moment of its acceptance the minds of the contracting parties met, and the contract was complete. Is it to be supposed that it was thought necessary for these brokers to go around with this instrument, setting forth the boundary of the property and in detail the terms of the proposed purchase, merely as an evidence of their authority as brokers to treat with Alford on the subject of the purchase of his property? We think not. The writing was intended for Alford's acceptance or rejection, as much so as if it had been addressed to him, saying that the signers "hereby offered for the property, through their brokers, Stedman & Bowman, the sum of," etc. And, acting with this end in view and in pursuance of the intention with which the writing was prepared, the brokers did present it to Alford, who, at once, accepted it—his acceptance being likewise in writing.

The two writings thereby and at once became the contract of the parties, enforceable not alone against the Wilsons but against Alford as well. The brokers stood in the shoes of their principals and made not their own offer but that of their principals.

The offer was continuous and bound the principals upon its acceptance, and after that, it was equally binding on Alford. Mutuality of obligation therefore required in the case of Usher's Ex'or v. Flood, 83 Ky., 552, is not lacking in this case.

The statute supposed to be fatal to the enforcement of the alleged contract provides that no action shall be brought to charge any person upon any contract for the sale of real estate unless the contract, "or some memorandum or note thereof be in writing and signed by the

party to be charged therewith," etc. (Gen. Stats., chap. 22, sec. 1.)

It seems to us that the substantial requirements of the statute have been complied with in this case, and that the writings constitute a memorandum of the contract, signed by the parties to be bound, upon which an action for specific execution can be maintained. It is contended otherwise for the reason that the written acceptance was not delivered to the Wilsons, or any one for them, so far as the petition shows, and this contention is thought to be upheld by the case of Newburger v. Adams, 92 Ky., 27. An examination of that case discloses that the offer of the proposed purchaser was not accepted by the vendor. The writing indorsed on the offer was, " I will accept the $3,200 for the above described property, $1,000 in cash and the balance in equal payments of one and two years;" and the offer differed materially from this conditional acceptance as to the terms of payment. Under these circumstances, the indorsement of the vendor was a rejection of the offer and a new proposal altogether, which, of course, must have been delivered to the vendee and accepted by him before it could be said that the minds of the contracting parties had met. This phase of the question is aptly discussed in the case of Drury v. Young, 58 Md., 546 (s. c., 42 Am. Rep., 343), where it is said: " Now, the statute itself is entirely silent on the question of the delivery of the note or memorandum of the bargain, and its literal requirements are fulfilled by the existence of the note or memorandum of the bargain, signed by the party to be charged thereby. The statute itself deals exclusively with the existence and not with the custody of the paper. If the non-delivery of the

Alford v. Wilson, &c.

note does not violate the letter of the statute, would it violate its spirit and be liable to any of the mischiefs which the statute was made to prevent? The statute was passed to prevent fraud practiced through the instrumentality of perjury. It was passed to prevent the defendant from suffering loss upon the parol testimony of either a perjured or mistaken witness, speaking of a bargain different from the one in fact made. It made the defendant only liable when a note or memorandum of the bargain, -signed by himself, was produced at the trial." The statute under discussion in that case is similar to ours, as are all the statutes on that subject, having been adopted from the English Statute of Frauds, and many English cases are cited to substantiate the point involved. (See Gibson v. Holland, L. R. 1 C. P., 1; Johnson v. Dodgson, 2 M. & W., 653.)

We think the demurrer should have been overruled, and the judgment dismissing the petition is reversed and cause remanded for proceedings conformable to this opinion.