### LOWTHER v. POTTER et ux.

(District Court, E. D. Kentucky. May 27, 1912.)

1. FRAUDS, STATUTE OF (§ 117*)—CONTRACTS FOR SALE OF REAL PROPERTY—MEMORANDUM—DELIVERY.

    It is sufficient to take a parol contract for a sale of real estate out of the statute of frauds if a note or memorandum thereof is made and signed by the party to be charged, although it is not delivered, but retained in his own possession.

    [Ed. Note.—For other cases, see Frauds, Statute of, Cent. Dig. § 261; Dec. Dig. § 117.*]

2. FRAUDS, STATUTE OF (§ 117*)—CONTRACTS FOR SALE OF REAL PROPERTY—SUFFICIENCY OF MEMORANDUM—UNDELIVERED DEED.

    An undelivered deed to real estate which contains no recital of a previous contract of sale does not of itself constitute a memorandum of such a contract which will satisfy the statute of frauds.

    [Ed. Note.—For other cases, see Frauds, Statute of, Cent. Dig. § 261; Dec. Dig. § 117.*]

In Equity. Suit by C. F. Lowther against William Potter and Nancy Potter, his wife. On demurrer to bill. Demurrer sustained.

Simeon S. Willis, of Ashland, Ky., for plaintiff.
David Hays, of Whitesburg, Ky., for defendants.

COCHRAN, District Judge. This cause is before me on demurrer to the bill.

It is a suit for the specific performance of a contract for the sale of certain real estate on Elkhorn creek and its tributaries, in Letcher county, Ky., and within this district, alleged to have been made on or

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

about September 20, 1910, by the defendants with one D. V. Lowther. The consideration to be paid for the land covered by the contract was the sum of $2,080. Two deeds for different portions thereof were to be made, one a general warranty deed, and the other a quitclaim. It is not alleged that the contract was in writing. It must be taken, therefore, that it was an oral contract. It is alleged that on September 20, 1910, the defendants prepared, signed, and acknowledged deeds in accordance with the contract, and in pursuance thereof, conveying the real estate and defendants agreed to carry same to Whitesburg in Letcher county, and there deliver them on receipt of the consideration, which they thereafter refused to do, and that on the same day—i. e., September 20, 1910—the defendants made an affidavit in which they stated that by deed of even date therewith they conveyed lands and interests in land in Letcher county, Ky., and had executed no mortgages or other conveyances affecting the title to the lands conveyed, and there were no instruments executed by them affecting the title to the property and interest so conveyed except what were on record in the clerk's office in Letcher county, Ky., and delivered same to the purchaser, D. V. Lowther. Thereafter, to wit, on September 30, 1910, D. V. Lowther in writing assigned the contract of sale to the plaintiff, and he brings this suit to enforce the contract as assignee thereof. Both at the time of the making of the contract and its assignment as well as at the time of the bringing of the suit were citizens and residents of West Virginia.

The ground of the demurrer is that the contract was not in writing, nor was there any written memorandum or note thereof signed by the defendants or by their authorized agent as required by section 470 of Kentucky Statutes, which is substantially the same as the English statute of frauds (St. 29 Chas. 2). The plaintiff relies on the undelivered deed and the delivered affidavit, both of which were signed by the defendants, the one acknowledged and the other sworn to, as a sufficient memorandum or note in writing of the contract to take the case out of the statute. I will consider each instrument by itself.

How is it then as to the undelivered deed?

[1] The plaintiff claims that the statute only requires that the vendor sign the written memorandum or note called for by it, and that it does not require that the memorandum or note be delivered, and argues from these two positions that a case involving an undelivered deed, as here, is not within the statute. I think that these two positions on which he bases his conclusion are sound. It must be accepted that the statute only requires that the vendor sign the written memorandum or note. It was so held by the Court of Appeals of Kentucky in the recent case of City of Murray v. Crawford, 138 Ky. 25, 127 S. W. 494, 28 L. R. A. (N. S.) 680, following a line of earlier decisions to the same effect. I think, also, that the better doctrine is that the statute does not require a delivery of the written memorandum or note. Some cases in other jurisdictions hold that such a statute does require a delivery, but the weight of authority is otherwise. Benjamin on Sales (7th Ed.) § 218, says:

. "Now the statute in itself is entirely silent on the question of the delivery of the note or memorandum of the bargain signed by the party to be charged thereby. The statute itself deals exclusively with the existence, and not with the custody of the paper."

In a note to the case of Charlton v. Columbia Real Estate Co., 67 N. J. Eq. 629, 60 Atl. 192, 69 L. R. A. 394, 110 Am. St. Rep. 495, as reported in 3 Ann. Cas. 402, it is said:

"Both on principle and authority, however, it would seem that delivery of a memorandum of a verbal agreement, otherwise sufficient to satisfy the statute, is not essential to its validity and binding force and effect."

No case involving this question decided by the Court of Appeals of Kentucky has been cited to me, nor have I found any such. In the case of Fugate v. Hansford, 3 Litt. (Ky.) 262, an owner of a lot in the town of Carlisle had given a written order on the town trustees to make a deed therefor to another, reciting therein that such other person had that day purchased the lot from him and paid him the purchase price. It was held that that order was a sufficient note or memorandum to entitle the purchaser to specific performance. But there the order had been delivered to the purchaser. In the case of Kleeman & Co. v. Collins, 9 Bush (Ky.) 460, there was some proof that the vendor had written to his partner or agent specifying the terms of the contract of sale. Judge Pryor said:

"Counsel for appellee now insists that such a memorandum, if proven, will take the case out of the statute. We are not disposed to doubt but that such a letter being produced, or its contents proven, if lost, showing the nature of the contract would be sufficient evidence of the agreement."

There, though there had been no delivery to the purchaser, the vendor had put the memorandum out of his possession, and in similar cases emphasis is sometimes placed on this phase of the matter, as, for instance, in the case of Wier v. Batdorf, 24 Neb. 83, 38 N. W. 22. Judge Maxwell said:

"There is a class of cases where letters have been addressed to a third party, stating and affirming the contract where such letters may be used against the writer as evidence of the contract. It is sometimes said that such letters may be used as a memorandum of the contract. In fact, however, such letters are independent evidence or admissions by the party to be charged of the existence of the contract and its nature; and, being delivered to a third party and thus beyond the control of the writer of the letters, they are held to be admissible against such party as admissions in writing."

In the case of McBrayer v. Cohen, 92 Ky. 479, 18 S. W. 123, the sale was at public auction by an auctioneer. He made a memorandum of the sale and terms thereof in a blank book of the vendor, signing it, leaving the book in the vendor's possession, and making a duplicate of the memorandum which he held for the purchaser's benefit and subject to his demand. But, as Judge Lewis said:

"The auctioneer is to be ordinarily treated as agent of both seller and purchaser of real as well as personal property sold by him."

So it is that I find no decision of the Kentucky Court of Appeals involving the question whether a written memorandum or note signed

by the vendor and retained in his custody will take the case out of the statute. In this connection, however, it is to be noted that I am dealing with the memorandum or note of a contract for the sale of real estate referred to by the statute, and not to the contract itself. The statute recognizes that a contract for the sale of real estate and a memorandum or note thereof are two distinct things and requires that one or the other must be in writing. The latter presupposes a previous oral contract; the former does not. Now in a case not involving a memorandum or note of a previous oral contract, but simply whether a written contract for the sale of real estate has been made, there must be a delivery. A delivery is essential to the making of the contract for the sale. Such was the case of Newburger v. Adams, 92 Ky. 26, 17 S. W. 162. In that case the purchaser delivered to the vendor's agents, who, in turn, handed it to their principal, the vendor, a written offer to buy. The vendor indorsed on this written offer an acceptance thereof, but changing the terms as to the payment of the purchase price in a slight particular, sufficient, however, to prevent the making of the contract had there been a delivery without more. The vendor retained the written offer with his acceptance indorsed thereon, and thereafter the purchaser gave verbal assent to the change in terms to the vendor's agents or to the vendor, to which not appearing. Thereafter the vendor tendered a deed in accordance with the contract, and demanded performance on part of the purchaser, and upon his refusal brought suit to enforce it. It was held, that he was not entitled to the relief sought because of the nondelivery of the acceptance of the offer. Inasmuch as the purchaser gave his assent to the change in the terms of payment of the purchase price, the case was disposed of the same as if the acceptance had made no change in the terms, so that there would have been a binding contract had the acceptance been delivered. Judge Pryor said:

"The trouble in this case, it seems to us, is the failure to allege that the writing upon which the proposition of purchase was made by the defendant and the indorsement of an acceptance by the plaintiff changing the time of payment was ever delivered to the defendant, or to any one authorized to receive it for him. The appellee (the vendor) held the bond for title as well as the deed and the appellant (the vendee) had no written evidence of any sale by the defendant to him of the realty in question. * * * If the appellant had sued Adams to enforce the contract, he could have responded that the writing had never been delivered either to the defendant or to any one for him, and a mere parol promise to deliver would not upon such a state of facts be enforced. If, on the other hand, the writing had been delivered to the defendant upon his (the defendant's) promise to pay the money as alleged, that part of the agreement consenting merely to a change as to the time of payment, although in parol, would have been enforced. It would have been a bond for title delivered by the vendor to the vendee and the latter's promise to pay, whether in parol or in writing, could have been enforced. As it now appears the obligation to comply is on the defendant alone. The plaintiff has the contract in his pocket and tenders a deed upon a parol promise to pay. It presents a case where the vendor, although executing a bond for title, retains it and then asks to enforce its terms. The delivery to the vendee is, in such a case, essential in order to perfect the agreement, and without it the contract is not complete."

The subsequent case of Alford v. Wilson, 95 Ky. 506, 26 S. W. 539, does not decide to the contrary of what was thus decided, though the way in which it was handled by Judge Hazelrigg, who delivered the opinion on behalf of the court, is likely to give rise to the thought that it did. That this is so will appear from a careful and close criticism of that case. There the purchasers gave a written authority, hereafter termed a "power of attorney," to their brokers to offer a certain sum for certain real estate. The brokers, instead of in words making an offer on behalf of the purchasers, did so by act—i. e., by submitting the power of attorney to the vendor—and thereupon, both the purchasers' brokers and the vendor being present, the vendor indorsed on the power of attorney an acceptance of the offer, and it was treated by them as if a binding contract had been made. It is not stated who took charge of the paper after the indorsement of acceptance was made on it. Seemingly the custody thereof thereafter was in the vendor. It was held that as a result of what had taken place there was a contract of sale between the parties which could be enforced by the vendor. The lower court had held otherwise, basing its ruling on the ground that it was essential that there should have been a written offer on the part of the purchasers to the vendor, and the submission of the power of attorney on their behalf by their brokers to the vendor was not the making of such an offer or the equivalent thereof. It was conceded that, if the writing "could be held under the facts presented in the case as being equivalent to a written offer" by the vendors, "the case for the plaintiff was complete and a concise specific contract for the purchase of the land was made out."

In answer to the position of the lower court on which it based its ruling Judge Hazelrigg said:

"The writing must be regarded as the offer of the Wilsons (the purchasers), not merely the 'equivalent,' but the very offer to be presented to the vendor; and for what must we say it was so offered? Certainly for acceptance or rejection, and at the moment of acceptance the minds of the contracting parties met, and the contract was complete. Is it to be supposed that it was thought necessary for these brokers to go around with this instrument, setting forth the boundary of the property and in detail the terms of the proposed purchase, merely as an evidence of their authority as brokers to treat with Alford (the vendor) on the subject of the purchase of his property? We think not. The writing was intended for Alford's acceptance or rejection, as much so as if it had been addressed to him, saying that the signors 'hereby offered for the property through their brokers, Stedman & Bowman, the sum of,' etc. And acting with this end in view, and in pursuance of the intention with which the writing was prepared, the brokers did present it to Alford (the vendor) who, at once, accepted it, his acceptance being likewise in writing. The two writings thereby and at once became the contract of the parties, enforceable not alone against the Wilsons (the purchasers), but against Alford (the vendor) as well. The brokers stood in the shoes of their principals, and made not their own offer, but that of their principals."

This responded to the only ground upon which the lower court had held that no contract had been made. It seems, however, to have been urged that no contract had been made because there was no delivery of the acceptance by the vendor, in that he retained the

custody of the power of attorney with the indorsement of his acceptance thereon, and that the case of Newburger v. Adams was an authority in support of this position. Judge Hazelrigg said:

"It is contended otherwise (i. e., that the statute had not been complied with) for the reason that the written acceptance was not delivered to the Wilsons (the purchasers) or any one of them, so far as the petition shows, and this contention is thought to be upheld by the case of Newburger v. Adams, 92 Ky. 27 [17 S. W. 162]."

The true answer to this contention was that in the case then in hand there had been a delivery of the written acceptance which was not the case in Newburger v. Adams. In order to the making of a written contract for the sale of real estate, it is not essential that there be an actual delivery. A constructive delivery will do. In 29 A. M. & Eng. Enc. of Law, p. 855, it is said:

"Actual delivery is not necessary. It must only appear that what was done was intended by the parties as a delivery."

In the case of Alford v. Wilson, though there had been no actual delivery, that was done which should be held was intended by the parties as a delivery. In other words, there was a constructive delivery. The power of attorney to make the offer was submitted by the purchasers' brokers to the vendor, and he thereupon indorsed his acceptance on it, and it was treated that a contract had been made, notwithstanding the fact that the vendor after indorsing his acceptance on the power of attorney retained custody of it. The transaction was substantially the same as it would have been had a formal contract of sale been drawn up, signed first by the purchasers' brokers and on their behalf and then by the vendor, and the vendor upon signing had retained the custody of the contract. The vendor did not have to go through the formality of handing the contract in its completed condition to the purchasers' brokers before taking custody of it in order to the making of the contract. That was done which was intended by the parties as a delivery. So in the case of Alford v. Wilson, when the vendor indorsed his acceptance on the power of attorney, he did not have to go through the useless formality of handing the instrument of writing consisting of the power of attorney, construed to be a written offer from the purchasers to the vendor, and the vendor's acceptance thereof, to the purchasers' brokers before taking custody of it in order to a binding contract.

Now in Newburger v. Adams there was neither an actual delivery, nor was anything done that can be said to have been intended as a delivery. The written offer of the purchase was not submitted to the vendor in person. Apparently it reached him through his agents to whom it was submitted by the purchaser. After he received it and in the absence of the purchaser, he indorsed his acceptance on it, and thereafter retained it in his custody.

Such I believe to be the true distinction between the two cases. They were alike, in that neither involved a memorandum or note of a previous oral contract for the sale of real estate, but whether a written contract for the sale of real estate had been made. They

differed, in that in Newburger v. Adams there had been no delivery, whereas in Alford v. Wilson there had, though not an actual delivery. Each decision, therefore, was perfectly sound. But Judge Hazelrigg did not respond to this contention in the way in which I have suggested. He conceded that there had been no delivery in the case he had in hand and dealt with the situation on that basis. Apparently he thought that in such a case no delivery was essential, and that Newburger v. Adams was wrong in so far as it held that it was. So thinking, he was put to overruling the case directly or finding some other basis for upholding it than the ground upon which it was put, to wit, that a delivery was essential. He resorted to the latter alternative. He justified the decision on the ground that there had been no acceptance of the offer, because the acceptance indorsed on the offer changed the terms as to payment of the purchase price. He said:

"An examination of that case discloses that the offer of the proposed purchaser was not accepted by the vendor. The writing indorsed on the offer was: 'I will accept the $3,200 for the above-described property, $1,000 in cash and the balance in equal payments of one and two years.' And the offer differed materially from this conditional acceptance as to the terms of payment. Under these circumstances, the indorsement of the vendor was a rejection of the offer and a new proposal altogether, which, of course, must have been delivered to the vendee and accepted by him before it could be said that the minds of the contracting parties had met."

But the decision in Newburger v. Adams was not, and properly could not have been, placed on this ground. This is so because after the indorsement was made it was agreed to by both parties that the change in the payment should be made, and that a deed be made and the notes executed in accordance therewith, so that the minds of the parties did meet without a delivery of the acceptance. The case was within the statute because there was no memorandum or note of this oral meeting of the minds after the indorsement of the acceptance and no written contract had been made because of the nondelivery of the acceptance.

Having thus gotten rid of Newburger v. Adams as an authority against the position that in such a case a delivery of the acceptance was not essential, he proceeded to justify the position by treating the case as involving, not the question whether a written contract had been made, but whether there was such a memorandum or note as to take the case out of the statute and citing an authority to the effect that no delivery of the memorandum or note called for by the statute is required. He said:

"It seems to us that the substantial requirements of the statute have been complied with in this case, and that the writings constitute a memorandum of the contract, signed by the parties to be bound, upon which an action for the specific execution can be maintained."

The authority which he cited to the effect that no delivery of the memorandum or note called for by the statute is required was the case of Drury v. Young, 58 Md. 546, 42 Am. Rep. 343. He quoted from the opinion this language:

"Now, the statute itself is entirely silent on the question of the delivery of the note or memorandum of the bargain, and its literal requirements are fulfilled by the execution of the note or memorandum of the bargain, signed by the party to be charged thereby. The statute itself deals exclusively with the existence, and not with the custody of the paper. If the nondelivery of the note does not violate the letter of the statute, would it violate its spirit, and be liable to any of its mischiefs which the statute was made to prevent? The statute was passed to prevent fraud practiced through the instrumentality of perjury. It was passed to prevent the defendant from suffering loss upon the parol testimony of either a perjured or mistaken witness, speaking of a bargain different from the one in fact made. It made the defendant only liable when a note or memorandum of the bargain, signed by himself, was produced at the trial."

But, as we have seen, the case like that of Newburger v. Adams did not involve the question whether there was a sufficient memorandum or note to take the case out of the statute, but whether a written contract had been made. Because of this, I do not think that it can justly be treated as an authority to the effect that delivery is not essential to the making of a written contract for the sale of real estate, or as in conflict with Newburger v. Adams on this point, for, as I have already shown, there was a delivery, though the delivery was not actual. It was merely constructive and that was sufficient.

The result, then, of the extended consideration of these two cases is that Newburger v. Adams is not an authority against the position that delivery of the memorandum or note called for by the statute is not essential to take a case out of it, it being solely an authority for the position that delivery is essential to the making of the written contract called for thereby; that Alford v. Wilson does not in reality negative this latter position, though seemingly Judge Hazelrigg thought it was unsound and Newburger v. Adams so far as it was based on it was wrongly decided; and that Judge Hazelrigg in that case, though it did not call for it, gave assent to the position that delivery of the memorandum or note called for by the statute is not essential to take a case out of it. In this way, then, the position that a delivery of memorandum or note called for by the statute is not required has been approved, and not by any decision to that effect in a case involving the question.

[2] I will, therefore, dispose of this case on the idea that both the positions on which plaintiff bases his contention that an undelivered deed takes a case out of the statute are sound, to wit, that the statute only required that the vendor sign the memorandum or note called for by it, and that it is not essential that it be delivered.

Does it follow therefrom that an undelivered deed takes a case out of the statute? It seems to me that it follows therefrom that such a deed, which contains a recital that it is made in pursuance to a previous contract of sale, takes the case out of the statute. But I am equally convinced that such a deed which contains no such recital, which is the case here, does not, and that notwithstanding it sets forth the terms upon which it is being made. Because a vendor has in his custody such a deed fully executed and acknowledged does not necessarily mean that there has been a previous contract of sale pursu-

ant to which it was so executed and acknowledged. It may mean no more than a willingness and purpose to convey on the terms stated therein. The circumstances of the custody of such a deed is therefore equivocal. Perhaps it is just to say that it is more likely that it was executed and acknowledged in pursuance of a previous contract of sale than not. But that such is the case is a mere inference from the custody of such a deed. The deed does not say that such is the case, and, in the absence of such a statement therein, it cannot be said that there is a memorandum or note of an existing contract of sale for the real estate covered by the deed on the terms stated therein. How, then, does the matter stand upon authority? Reference is made on behalf of plaintiff to this statement in note to the case of Halsell v. Renfrow, 202 U. S. 287, 26 Sup. Ct. 610, 50 L. Ed. 1032, 6 Ann. Cas. 189, as reported in 50 Lawyer's Co-operative Company's Edition, p. 1032, to wit:

"A sharp conflict exists on the question whether an undelivered deed will satisfy the statute of frauds. Cases answering the question in the affirmative are Jenkins v. Harrison, 66 Ala. 345; Griel v. Lomax, 89 Ala. 420, 6 South. 741; Johnston v. Jones, 85 Ala. 286, 4 South. 748; Magee v. Blankenship, 95 N. C. 563; Bowles v. Woodson, 47 Va. 78."

The cases thus referred to are not before me. In order that they may support plaintiff's contention, it is essential that the deeds involved in them respectively contained no recital that they were made pursuant to a previous contract of sale. So far as they contained such a recital the cases involving them do not support it. But the note referred to continues as follows, to wit:

"The great weight of authority, however, is to the effect that an undelivered deed, whether or not the terms of the contract are fully recited in it, will not of itself constitute a memorandum of the contract which will satisfy the statute of frauds."

And it cites in support of this statement decisions of the Supreme Courts of Indiana, Georgia, New York, Pennsylvania, Texas, Arkansas, Washington, Iowa, Nebraska, Minnesota, Massachusetts, Maine, Wisconsin, California, and Illinois. It concludes with these words, to wit: "The more recent cases take the same view, that an undelivered deed will not take the contract out of the statute of frauds"—citing in support thereof three decisions of the Supreme Court of Nebraska, Tennessee, and Maine. Of course, deductions must be made from these decisions of such of them as came from courts holding that delivery of the memorandum or note called for by the statute is essential. Such decisions have no pertinency here, in so far at least that they are based on this position, for I am proceeding on the basis that no such delivery is required. But no great amount of deduction has to be made on this score because in the quotation heretofore made from the note to the case of Charlton v. Columbia Real Estate Co., 67 N. J. Eq. 629, 60 Atl. 192, 69 L. R. A. 394, 110 Am. St. Rep. 495, as reported in 3 Ann. Cas. 402, it is stated that the weight of authority is to the effect that no such delivery is required and thereafter in the same note it is stated further as follows, to wit:

"Where the undelivered deed, will, or other writing relied on to take the case out of the statute does not set forth the terms of any agreement, pursuant to which it was executed, it does not, of course, satisfy the requirement of the statute and is of no force and effect as a note or memorandum in writing."

And in support thereof numerous decisions are cited.

My conclusion thereof, both upon principle and authority, is that the undelivered deed in this case does not satisfy the requirements of the statute, and that it does not follow that it does from the two positions advanced by plaintiff to whose correctness I have acceded. There is nothing in any of the decisions of the Kentucky Court of Appeals lending support to the claim that any such significance should be attached thereto.

Then how is it as to the delivered affidavit? That writing contains nothing more than the mere statement that by deed of even date therewith the defendants herein had conveyed lands and interests in land in Letcher county and they had theretofore created no incumbrances on the same, and there were none others than those of record. Clearly there is nothing in this to satisfy the statute, and plaintiff seemingly attached no importance to it, as no reliance has been placed upon it in argument.

The demurrer is therefore sustained, with leave to amend.