ALFRED F. WILCOX v. GEORGE T. CLINE.

*Contract—Offer to sell real estate—Acceptance—Equity—Specific performance.*

1. While an offer to sell property, the acceptance of which is optional with the vendee, is not binding upon the vendor until accepted, its acceptance before withdrawal makes a complete and mutual contract, capable of enforcement.

2. In this case the Court finds from the testimony such an acceptance and tender as entitle complainant to a specific performance of the contract.

Appeal from Wayne. (Speed, J.) Argued May 8, 1888. Decided June 8, 1888.

|    |     |
|----|-----|
| 70 | 517 |
| 93 | 329 |
| 70 | 517 |
| 111| 25  |
| 70 | 517 |
| 148| ²494|
| 70 | 517 |
| 154| ¹416|

Bill for specific performance. Defendant appeals. Decree modified and affirmed. The facts are stated in the opinion.

*S. S. Babcock* and *John Atkinson*, for complainant, contended as stated in the opinion, and—

1. The actual *receipt* by defendant of the letters of acceptance was not essential, their *posting* being sufficient to create a contract; citing Benj. Sales, § 44, and cases discussed; *Mactier v. Frith,* 6. Wend. 103; *Moore v. Pierson,* 6 Iowa, 279.

*W. P. Wells* and *Alfred Russell,* for defendant, contended as stated in the opinion, and—

1. That specific performance is always a matter of discretion; citing *Rust v. Conrad,* 47 Mich. 454; and will be refused if the co irt is not satisfied that the contract sought to be enforced embodies the real understanding of the parties; citing *Chambers v. Livermore,* 15 Mich. 388.

2. In suits upon unilateral contracts, the defendant cannot be held bound unless the complainant was bound to buy the land, and defendant is shown to have received the benefit of the consideration for which he bargained; citing *Richardson v. Hardwick,* 106 U. S. 255, and English cases cited, which sustain cases where there is no mutuality of promise, which class of authorities is distinctly repudiated by this Court, which adopts the opposing class, holding such agreements void for want of mutuality; citing *Wilkinson v. Havenrich,* 58 Mich. 574.

3. As to jurisdiction in this class of cases, see 3 Pomeroy, Eq. § 1404 (n. 1).

MORSE, J.   The bill in this cause is filed for the specific performance of an alleged contract to sell land.   The premises in controversy are described as lo.s 1, 2, 3, 4, 5, 6, 7, and 8 of outlot No. 193, Rivard farm, Detroit, Wayne county, Mich.

The contract sought to be enforced reads as follows:

"I will sell lots 1, 2, 3, 4, 5, 6, 7, and 8 of outlot 193, Rivard farm, Detroit, Wayne Co., Mich., for $17,500, payable $8,000 cash; bal., $2,500 per annum, with interest annually from April 1, 1887, at 5 per cent.   Upon payment of *pro*

*rata* amount, lots to be released from mortgage for purchase money.

"Payments may be made of *pro rata* amounts at any time, on any lot or lots of subdivision, with interest at 5 per cent. to time of payment, or any of above payments may be made at any time before due. Payments to be made to David Preston, banker, and releases to be had through him upon such payments.

"This option is given to Alfred F. Wilcox until April 1, 1887, and, if not then accepted, to be void.

"GEO. T. CLINE.

"*Bellefontaine, Ohio, February 1, 1887.*

"It is hereby agreed by both parties to the above that the above agreement shall not be recorded."

The complainant claims that after the making of this contract or option, which was delivered to him at Bellefontaine, Ohio, he returned to Detroit, where he resided; and that, on March 21 following, he wrote to defendant, addressing him at Chillicothe, Ohio, the following letter accepting said proposal:

"I have decided to, and do hereby, accept your written proposal of February 1, 1887, to sell me lots 1, 2, 3, 4, 5, 6, 7, and 8 of outlot 193, Rivard farm, in this city, and am prepared to comply with the terms of said proposal.

"Will you forward deed to Mr. Preston, or some one here, for delivery, on receipt of the down payment and mortgage specified in your proposal, or how will you arrange for the transfer?

"Trusting there will be no delay in concluding the matter, I await your early reply.

"Very truly, A. F. WILCOX."

He also testified that on March 31, 1887, he wrote his acceptance upon said contract as follows:

"I accept the above proposition this 31st day of March, 1887.                    ALFRED F. WILCOX."

Complainant also gave evidence that he sent this acceptance by let er to Chillicothe on account of a postal-card received from defendant before that time, and dated at Parkersburg, Md., March 18, 1887, directing him to write him at

Chillicothe.    On March 21, complainant also mailed two
other unconditional acceptances, one to Cincinnati, Ohio, and
one to Frederick, Md.    Hearing nothing from defendant,
complainant on April 2, 1887, wrote him at Frederick City,
Md., the place of his residence, expressing surprise that
defendant had not forwarded his deed for delivery, and ask-
ing him to complete the transfer without further delay.
Receiving no reply, he sent a telegram. April 9 the defendant
wrote postal-card to complainant:

" Please forward copy of proposition, if you have one, as
promised; then I will communicate with you.
                    " Yours truly, GEO. T. CLINE."

Complainant then went to Frederick, and on April 16,
1887, saw the defendant, and tendered to him $8,000 in cur-
rency, and a mortgage for the payment of the balance as
stipulated in the proposal or option, and demanded a deed
of the premises.    The defendant refused to take the money
or to execute the deed.    Complainant claims that when he
saw Cline at this time he admitted that he received two of
the acceptances mailed by complainant on March 21,—the
one addressed to Chillicothe, and the one directed to Fred-
erick City.    The one mailed to Cincinnati was returned
through the post-office to complainant at Detroit.    Accord-
ing to complainant's testimony, Cline admitted receiving
these letters about March 27 or 28, at Chillicothe; the one
addressed to Frederick being forwarded from there by
defendant's nephew.    Complainant, therefore, claims that
defendant received his acceptance in time, that he has per-
formed by his tender, and that he is entitled to a deed from
the defendant in accordance with the contract.

The defendant claims that he understood the option when
he signed it to name $19,500 as the purchase price of the
lots instead of $17,500; that the complainant had been try-
ing to get the land for some time, claiming to act as the
agent of one Capt. Wallace, who held a large number of tax

titles upon the property; that defendant always asked $20,000 for the premises; that at the meeting at Bellefontaine he offered to take $19,500, allowing Wilcox $500 for his trouble or commission in effecting the sale. Complainant then picked up a paper, and hastily wrote out a proposal, reading it to defendant as $19,500 instead of $17,500, as it appeared to be written when he saw it at Frederick. Defendant says he did not have time to read it himself, as complainant was in a great hurry to reach the train. Complainant promised to send him a copy, but did not do so. Defendant never saw the proposal again until they met at Frederick, in April, and then he discovered, and was aware for the first time, that the purchase price was stated therein at $17,500. He also alleges that the proposal as written is false in another respect, as the agreement at Bellefontaine was that the conveyance should be by quitclaim deed.

Defendant further claims and testifies that he never received any notice or letter of acceptance from complainant, and that he never told him that he did; but on the contrary informed him at Frederick that he had never had such notice or letters. When the contract or proposal was handed to him at Frederick City he said at once, upon looking at it, to the complainant, that there was a mistake; that it should read $19,500 instead of $17,500. He thereupon refused to carry out the agreement. He denies that complainant made him any tender at Frederick, but says that he contented himself with simply stating that he had a draft of $5,000, and a mortgage executed for the balance, and demanded a deed of the property. The defendant also states that he supposed, in the negotiations for the purchase of these lots, that Wilcox was acting for one Capt. Wallace, who held about 100 tax titles against them.

The testimony of the complainant as to the tender at Frederick is fully corroborated by the testimony of Charles H. Freeman, an attorney at Detroit, who went to Frederick

with the complainant, and was present at the interviews with Cline there.    Freeman swears that $8,000 in legal tender notes was procured there, and both this money and the mortgage shown and tendered to Cline, and a deed demanded. Freeman also testifies that Cline then admitted receiving two of the acceptances, as stated by Wilcox in his testimony, the one directed to Chillicothe and the one mailed to Frederick,— the one mailed to Frederick being forwarded from there to defendant at Chillicothe by his nephew, a Mr. Teakle; and that he received them both before April 1.

The court below, upon pleadings and proof, decreed that the defendant should execute and deliver "a good and sufficient deed of conveyance, in the usual form," of the lots in controversy, to the complainant;—

"Said deed to contain the usual covenants of warranty, and except from the operation of said covenants any and all interests or rights in said property which may have been acquired by any person or persons prior to or on March 21, A. D. 1887, by virtue of or under any or all tax deeds, tax leases, or certificates of sale of said property for non-payment of taxes assessed thereon."

And that, in 20 days after the delivery of defendant's deed to the register of the court, the complainant should pay to the said register of the court the sum of $8,000, and deliver to him also a mortgage executed to said defendant by the complainant for the sum of $9,500; said mortgage to be payable in installments, and to draw interest at 5 per cent. from its date, said interest payable annually.    If the defendant should neglect or refuse to execute and deliver said deed, then the decree was ordered to stand for and operate as a full and complete conveyance to the complainant of all the right, title, and interest of defendant in and to said lots.

The defendant appeals from such decree to this Court.

From a careful study of the record, I am satisfied that the acceptances, two of them,—the ones mailed by complainant

to Frederick and Chillicothe,—were received by the defendant before April 1, 1887. I am also convinced that a tender of the money and the mortgage according to the terms of the contract was made to the defendant at Frederick, Md., as testified to by the complainant and Freeman.

An examination of the original contract shows beyond doubt that the price of the lots was written originally as it now is, $17.500. The testimony of the defendant that Wilcox read it at $19,500, and that he supposed it was at that figure until he saw the contract at Frederick, is not satisfactory to me; and in the light of the general character of his evidence, which is evasive and unreliable, I prefer to believe the statements of the complainant in this regard. We have it therefore settled that Cline executed the contract as it is, and knowing its full tenor and effect. Before the option expired he received a written acceptance of his offer by the complainant; and finally the complainant followed him to Frederick, and made a sufficient tender of performance of his part of the agreement. These facts being established, is there any reason why the decree of the court below should not be sustained and affirmed?

It is claimed—

1. That the contract or option is void for want of mutuality.
2. That there was no valid acceptance, because the proposal being delivered personally, and there being no method of acceptance prescribed, the acceptance was also required to be delivered personally. It is contended that there could be no acceptance by letter unless the proposal was by letter.

It is true that by the option or proposal made by defendant the complainant was not bound to purchase or accept the proposition, and the contract was not mutual because it had not been completed. Like all other offers or proposals upon the part of one party in the course of negotiations with another, the written option in this case was not binding upon defendant until accepted, and he was at liberty to withdraw

it at any time before acceptance; but, when accepted before such withdrawal, the contract was then completed and mutual. Otherwise there seldom could be a contract of sale made. If the party making an offer to sell property in this way is not to be bound after acceptance because the offer was a unilateral promise or contract, then there could be no such thing as a valid contract based upon an offer and acceptance, unless the parties were together when the contract was made, and the offer and acceptance were nearly, if not quite, simultaneous. The acceptance in this case was received by the defendant before he had withdrawn his offer or agreement to sell, and, after receiving the acceptance, he failed to notify complainant that he did not intend to stand by his offer.

We think the facts show conclusively that the parties intended from the beginning that the acceptance should be transmitted by mail. The complainant resided in Detroit, and the defendant at Frederick. No arrangement was made for their meeting for the purpose of acceptance or closing up the contract. And at no time did the defendant assign as a reason for the non-fulfillment of the contract on his part that the acceptance was not delivered personally to him, but he put his declination to execute a deed upon the ground that he had not received any acceptance within the time specified in his proposal, and upon the further ground that he had been defrauded in the making of the same, as it was not read to him as written.

The decree, however, should be modified. The defendant should not be required to warrant against any tax claims or tax deeds.

The complainant will recover costs of both courts.

The other Justices concurred.