## HOOGENDORN v. DANIEL et al.

### (Circuit Court of Appeals, Ninth Circuit. May 2, 1910.)

### No. 1,741.

1. PLEADING (§ 237*)—AMENDMENT—DISCRETION OF COURT.

It is within the discretion of a federal court to permit the amendment of a complaint during the trial to conform to the evidence, where the facts alleged and the relief prayed for are the same; the only change being in the allegations as to the legal effect of the transaction.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ ,603–619; Dec. Dig. § 237.*]

2. ESTOPPEL (§ 74*)—EQUITABLE ESTOPPEL—ACTS MISLEADING ANOTHER TO HIS PREJUDICE.

A defendant who gave a written option for the purchase of mining property, reciting a consideration, is estopped to deny the receipt of such consideration as against one who with his knowledge and without objection on his part purchased the option and paid a substantial consideration therefor.

[Ed. Note.—For other cases, see Estoppel, Cent. Dig. §§ 190, 191; Dec. Dig. § 74.*]

3. SPECIFIC PERFORMANCE (§ 65*)—CONTRACTS ENFORCEABLE—ACCEPTED OPTION.

An option to purchase real property after its acceptance and tender of performance by the holder, creates a contract which may be specifically enforced in equity at the suit of the vendee.

[Ed. Note.—For other cases, see Specific Performance, Cent. Dig. § 196; Dec. Dig. § 65.*]

Appeal from the District Court of the United States for the District of Alaska, Second Division.

Suit in equity by Otto Daniel against D. Hoogendorn and Harry Ruhl. Decree for complainant, and defendant Hoogendorn appeals. Affirmed.

The appellee Daniel brought a suit in equity against the appellant and the appellee Ruhl, who was made a party defendant for the reason that he was out of Alaska, and could not be made a coplaintiff. The complaint alleged: That on September 11, 1906, two certain mining claims and a building known as the "Golden North Hotel," in the town of Deering, Alaska, belonged to Fred Ruhl, Henry Ruhl, and Harry Ruhl; that on that date they conveyed the same to the appellant as security for a loan of $3,000; that two days later he made and delivered to them a written defeasance, wherein it was recited that, for a consideration of $5 in hand paid, the appellant would convey to them the said properties for a consideration of $3,540, to be paid on September 13, 1907, at Deering, Alaska, and the Ruhls were given the right to take possession of the mining claims and prospect and work them for the purpose of determining their value; that on August 24, 1907, the Ruhls conveyed to said Daniel all their rights in said mining claims under the agreement made with the appellant, with the provision that, upon the redemption of the property from the appellant by Daniel, the hotel property should be

conveyed .to Harry Ruhl, and they gave to Daniel full power to make the payment of $3,540 and to accept conveyance from the appellant; that on September 13, 1907, at Deering, Daniel made due tender of said sum to the appellant, and demanded of him a conveyance of the said properties, which tender was refused; and that also on October 4, 1907, at Nome, he made due tender to the appellant of the same sum, with interest, which tender was also refused. The complaint further alleged a deposit in court of $3,575, to be paid in accordance with the terms of the defeasance, and it prayed for a specific performance of the agreement, and that the appellant be required to convey the property in accordance therewith.

The appellant answered, denying that the deed was given him as security, and denying that the alleged tenders were made to him. Harry Ruhl answered, admitting the allegations of the bill, and joining in plaintiff's demand for relief.

.When the case came to trial, the Ruhls were all without the district of Alaska. The appellant testified that, notwithstanding he had recited in the option the receipt of $5 as consideration therefor, no money had been paid him, and that the agreement was simply an option without consideration, and he denied that tender was made to him as alleged in the complaint. It was shown that, after making the option, one of the Ruhls was placed in possession of the mining ground under the right given to mine the same, by the option agreement, but that subsequently the Ruhls went to Portland, Or., where Daniel, on being shown a copy of the option (or defeasance), purchased their right, title, and interest in the mining claims for $5,000, paid them $1,460, and agreed to pay the balance of $3,540 to the appellant at Deering, on September 13th, in accordance with the terms of the option. The evidence was that prior to leaving Portland for Alaska Daniel made arrangements with George McLeod, secretary of the Fairhaven Water Company at Nome, to tender the payment of $3,540 to the appellant. In pursuance of that request, McLeod saw the appellant on September 10, 1907, informed him that Daniel had purchased the property from the Ruhls, and was ready to pay the money when due, and inquired whether the appellant would accept a check, or would insist upon currency. There is evidence that the appellant made no objection to being paid by a check, but said he would take McLeod's check on the Fairhaven Water Company, and that on the morning of September 13th another interview was had between McLeod and the appellant, in the presence of Mr. Gadd, manager of the Fairhaven Water Company, in which the appellant was again asked whether he would require currency, and that he answered that he would take Gadd's check or McLeod's check, if proper authority was shown to redeem the property. There was testimony that, in the afternoon of the 13th, McLeod took Gadd's check to the appellant, and made tender thereof in payment, and that the appellant made no objection to the check, stating that he did not want payment, but wanted the ground unless the assignment papers were recorded. At that time the papers were not recorded, and had not been exhibited to the appellant. On September 13th the appellant received from Daniel, who was then at Nome, a telegram stating that he had purchased the property from the Ruhls, and had the conveyances in his possession, authorizing him to redeem the property, and stating that he would exhibit the papers to any one whom the appellant might suggest. Daniel arrived at Deering about a week later, and exhibited to the appellant his conveyance. There was evidence that on October 4th, at Nome, a second tender was made to the appellant by Daniel.

At the close of the plaintiff's case, with the permission of the court, an amended complaint was filed, which differed from the original complaint in designating the instrument signed by the appellant as an "option" to purchase instead of a "defeasance," but it prayed for the same relief as did the original complaint; that is, specific performance. Upon the issues and the evidence, the court found the facts substantially as they were alleged in the complaint, found that tender had been duly made on September 13, 1907, and on October 4, 1907, and entered a decree that the appellant be adjudged to accept the $3,575 deposited in the registry of the court, and to execute a deed to Daniel conveying to him the placer mining claims, and to Harry Ruhl a deed to the hotel property.

Albert H. Elliot, N. H. Castle, F. E. Fuller, C. A. Riddle, and Clarence E. Todd, for appellant.

Ira D. Orton, Campbell, Metson, Drew, Oatman & Mackenzie, and E. H. Ryan, for appellees.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

GILBERT, Circuit Judge (after stating the facts as above). The appellant contends that the court below erred in permitting the plaintiff to file the amended complaint. It is unnecessary to cite authorities to the proposition that, in order to promote justice, a court may, in its discretion, permit amendment at any time before or during trial, unless the amendment is violative of some positive rule of law, or is such as to surprise or prejudice the opposite party. It is contended that the effect of the amendment permitted in this case was to change the theory of the suit, and to surprise the appellant to his prejudice. The objection is not well taken on either ground. Both the complaints charged in substance the same state of facts. In the first it was alleged that the conveyance to the appellant was intended as security, and that the instrument which, two days later, he executed in return, was a defeasance. But a copy of the instrument was attached to the complaint, and the defendant was thereby advised of its purport. The relief sought in both complaints was the same, and it is doubtful whether any amendment was necessary to the original complaint in order that the court might render a just decree upon the issues and the evidence. But, however that may be, it is clear that there was no surprise or prejudice to the appellant, from the fact that the complaint was amended as it was. The amendment was made to conform to the facts as they had been disclosed in the testimony, and in exact accordance with the appellant's own testimony and theory of the case. He cannot complain if the plaintiff in the suit, after starting out with an erroneous theory or construction of the transaction, and of the option contract, finally, on the trial adopted the true theory, and the one on which he (the appellant) relied from the first.

No sufficient ground is found for disturbing the finding of the trial court, made upon the conflicting testimony, that a tender was duly made. But the appellant contends that the court erred in decreeing specific performance, for the reason that the option was given without consideration, and because there was no contract mutually binding upon the parties. The option recited the payment of $5 to the appellant "in hand paid"; but he testified, and the court found, that no sum was actually paid. Under the circumstances disclosed in the evidence, however, it is clear that the appellant is estopped to deny the payment of the consideration. It is not disputed that Daniel left Alaska with the intention of obtaining the option, and so informed the appellant, and told him that if he could get the property he intended to return to Alaska, otherwise not. After he had seen the option in the possession of the Ruhls, he purchased it, and paid $1,460 therefor in cash. The appellant never at any time informed him that the option was given without consideration, and his first knowledge of that fact was obtained on the trial when the appellant so testified. It was then

too late for the appellant to assert that there was no consideration for the option. If authority is needed upon a proposition so plainly founded on equitable principles, a case in point is Stewart v. Metcalf, 68 Ill. 109, in which it was held that, in the absence of fraud, a party to a written contract will be estopped from averring anything against the deliberate recitals and admissions contained in the same, especially when it will prejudice and work injury to others who have acted in good faith upon the belief of the facts as stated in the contract.

Nor should specific performance be denied the appellees for lack of mutuality of obligation. An "option to purchase land" given upon a valuable consideration is a grant of the right to purchase within the time specified therein, and although it is not binding upon the grantee thereof, until its acceptance, it does become binding and mutual when the offer is accepted, and the payment is tendered, as was done in this case. In such a contract, the purchaser pays for the privilege of his election, and the maker of the option sells him that privilege, and where the contract is free from fraud, and is based upon a sufficient consideration, it imposes upon the maker the obligation to perform it specifically, which equity will enforce. In 21 Am. & Eng. Encl. of Law, 929, it is said: "Whatever diversity of opinion may have existed as to the mutuality of obligation prior to an acceptance of the option, and whether there was or was not, for want of consideration, any obligation resting upon the giver of the option to hold the offer open, the courts are unanimous in declaring that, after such acceptance of the terms by the holder of the option, the parties are mutually bound, and either one may compel specific performance by the other." Marthinson v. King, 150 Fed. 48, 82 C. C. A. 360; Johnston v. Trippe (C. C.) 33 Fed. 530; Wilcox v. Cline, 70 Mich. 517, 38 N. W. 555; Bradford v. Foster, 87 Tenn. 4, 9 S. W. 195; Sayward v. Houghton, 119 Cal. 545, 51 Pac. 853, 52 Pac. 44; Stanton v. Singleton (Cal.) 54 Pac. 587.

The decree is affirmed.