CONLEY CAMERA CO. v. MULTISCOPE & FILM CO.†

(Circuit Court of Appeals, Eighth Circuit. July 27, 1914.)

No. 4172.

1. PLEADING (§ 367*)—INDEFINITENESS OF COMPLAINT—WAIVER OF OBJECTION.
    Under Gen. St. Minn. 1913, § 7770, which provides that, "if the allegations of a pleading are so indefinite or uncertain that the precise nature of the charge or defense is not apparent, the court may strike it out on motion or require it to be amended," objection to pleadings for such defects must be taken by motion, and cannot be raised for the first time in an appellate court.
    [Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 64, 1173–1193; Dec. Dig. § 367.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

† Rehearing denied October 5, 1914.

2. CONTRACTS (§ 10*)—VALIDITY—MUTUALITY OF OBLIGATION.

A contract by which one party pays a valuable consideration to the other party, who agrees to sell to the first party all of a certain class of goods he may wish to buy, is not invalid, for want of mutuality, because the first party does not obligate himself to purchase.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 21–40; Dec. Dig. § 10.*]

3. CONTRACTS (§ 10*)—VALIDITY—MUTUALITY OF OBLIGATION.

A contract by which the sole maker of a patented article agrees to supply such articles to a dealer having an established trade therein is not invalid, for want of mutuality, because the dealer does not expressly obligate himself to buy from the other party.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 21–40; Dec. Dig. § 10.*

Mutuality in contracts, see notes to American Cotton Oil Co. v. Kirk, 15 C. C. A. 543; Oakland Motor Co. v. Indiana Automobile Co., 121 C. C. A. 326.]

4. PATENTS (§ 216*)—CONTRACTS—VALIDITY—CERTAINTY—TIME OF PERFORMANCE.

A contract by the owner of a patent, who is the sole manufacturer of the patented article, to supply the same to a dealer as required, is not invalid because no length of time is specified, but will be construed as intended to remain in force during the life of the patent.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 329; Dec. Dig. § 216.*]

5. SALES (§ 416*)—ACTION FOR BREACH OF CONTRACT—EVIDENCE.

In an action for breach of a contract by defendant to supply plaintiff with such quantities of a certain style of patented camera as plaintiff might order, evidence that the cameras designated were imperfect, and not usable or salable without improvement, was not matter of defense, but was immaterial.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1171, 1172; Dec. Dig. § 416.*]

In Error to the District Court of the United States for the District of Minnesota; Charles A. Willard, Judge.

Action at law by the Multiscope & Film Company against the Conley Camera Company. Judgment for plaintiff, and defendant brings error. Affirmed.

Charles Lederer, of Chicago, Ill. (Sidney Adler, of Chicago, Ill., and Tawney, Smith & Tawney, of Winona, Minn., on the brief), for plaintiff in error.

Edward Lees, of Winona, Minn. (M. B. Webber, of Winona, Minn., and Simmons & Walker, of Racine, Wis., on the brief), for defendant in error.

Before SANBORN, Circuit Judge, and TRIEBER and REED, District Judges.

TRIEBER, District Judge. The plaintiff sought to recover damages for the breach of two contracts, one executed on November 20, 1907, and the other on December 2, 1908; but as the court below held that there could be no recovery on the first contract, and the cause was tried solely for the alleged breach of the second contract, the first need not be considered.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

The complaint alleges the execution of a contract, which is as follows:

"This agreement witnesseth, that the Multiscope & Film Company, a corporation of Wisconsin, first party, has sold and assigned, and by these presents does grant, bargain, sell and assign, to Conley Camera Company, a corporation of Minnesota, second party, for and in consideration of the sum of five hundred dollars ($500.00), and an order for not to exceed nine thousand dollars ($9,000) worth of photographic wooden ware, which second party agrees to pay for within twenty days from date of invoice and acceptance, the receipt of which is hereby acknowledged, all those letters patent of the United States of America, title to which is now in said first party, granted for improvements in panoramic cameras to various parties, being identified as letters patent of the United States of America #567,559, #671,154, #773,348 and #778,394, and all other letters patent or right to letters patent issued or pending for improvements in panoramic cameras to or in which said first party may have any right, title or interest; also all those goods, merchandise, tools, chattels and dies described in a separate invoice of the same bearing even date herewith, hereto attached and marked 'Exhibit A.'

"In consideration of the sale of said goods, merchandise, tools, chattels and dies by first party to second party, second party agrees that it will continue to sell to first party cameras (manufactured) under said letters patent and known as the 'Al-Vista' panoramic film cameras, at the same prices which first party is now paying to second party for such cameras, subject to a pro rata advance in case of an advance in cost of materials or labor over present prices, irrespective of quantities.

"This agreement not to be construed as intending that second party shall sell only to first party, it being the intention that said second party may sell such cameras without restriction, except that it is hereby expressly agreed that, so long as first party shall continue to purchase such cameras from second party, neither first party nor second party shall give or allow in any way greater discounts from the list price of such cameras than the following:

"To the jobbing trade 40 per cent. and 25 per cent., equivalent to 55 per cent.

"To retail dealers 40 per cent.

"To consumer or user 20 per cent.

"Above discounts shall not bind party of the first part on sale of such cameras known as 5-F style which it now has on hand.

"List prices of various styles of said cameras shall from time to time be established by party of second part, not to exceed once each year, by mutual consent. It is further agreed that this agreement as to discount shall not apply to cameras sold to Sears, Roebuck & Co., and that there shall be no restriction as to the prices at which said cameras may be sold to Sears, Roebuck & Co.

"It is further understood and agreed that in case first party shall at any time give or allow, directly or indirectly, to any purchaser from it of cameras sold to it by second party, and discounts, rebates, premiums, bonus or deductions in price which in the aggregate shall reduce the price to such purchaser to a less amount than the amount above agreed upon, or in case first party shall sell its business or shall cease doing business at any time, or in case the holders of a majority of the shares of stock of first party shall sell or dispose of a majority of said stock, then this agreement as to the sale of cameras by second party to first party shall cease and determine.

"Further agreed and understood that this contract is not assignable on party of the first part, but that it shall bind the successor and assigns of the party of the second part.

"Dated this 2d day of December, 1908.

"Multiscope & Film Co.
"By Leonard J. Smith, Pres.
"Conley Camera Company,
"By Kerry Conley."

It is further alleged that after the execution of the contract the plaintiff complied in all respects with the terms thereof, but that the

defendant furnished only a small portion of the cameras, and then refused to ship any more of the cameras, although frequently requested by the plaintiff to do so, and informed that the plaintiff required the cameras mentioned in order to supply its trade and fill orders from its customers; that the plaintiff had a regular and established business in the said "Al-Vista" panoramic cameras, which, by reason of the refusal of the defendant to fill its orders, was destroyed. There are also allegations in the complaint as to the breach of the first contract, which, for the reasons above stated, it is unnecessary to set out herein.

The answer of the defendant admits the execution of the contract and sets up as a defense that the "Al-Vista" cameras made under the patents of the plaintiff were imperfect and incomplete, and could not be successfully operated, used, or sold. It also denies that the plaintiff has performed its part of the contract, and also contains a general denial.

There was a trial and a verdict in favor of the plaintiff for the damages sustained, but the damages were confined by the court to the profits the plaintiff would have made on the orders it actually received for these cameras, but which it could not fill owing to defendant's refusal to furnish them.

[1] Before the cause was to be tried the defendant moved for a judgment on the pleadings, which was overruled after the plaintiff had amended its complaint. In our opinion, the complaint, as amended, is sufficient, although, had the defendant, at the proper time, made a motion to have it made more specific, the court would no doubt have granted it. Section 7770, Gen. St. Minn. 1913, provides that:

"If the allegations of a pleading are so indefinite or uncertain that the precise nature of the charge or defense is not apparent, the court may strike it out on motion, or require it to be amended."

The defendant made no motion, before the trial, to require the complaint to be made more definite and certain, and it is too late to raise it in the appellate court. Barker v. Foster, 29 Minn. 166, 12 N. W. 460; Truesdell v. Hull, 35 Minn. 468, 29 N. W. 72.

[2] It is also insisted that judgment should have been rendered in its favor on the pleadings, because the contract is void for want of mutuality, and that there is no definite time within which it is to be performed. It is true that an executory contract without any express consideration passing to the party who undertakes to sell certain property or perform certain services, when there is no corresponding obligation on the other party, will be void for want of mutuality. But this rule does not apply when there is a valuable consideration paid by the one party to the other party who obligates himself to do a certain thing. In Joy v. St. Louis, 138 U. S. 1, 50, 11 Sup. Ct. 243, 258 (34 L. Ed. 843), the court quotes the following excerpt from the opinion of Mr. Justice Brewer, then Circuit Judge, delivered in that case in the Circuit Court:

"As to the objection that there is no mutuality in the contract, and therefore it cannot be enforced, the Circuit Court says in its opinion: 'As to the objection on the ground of the want of mutuality in the contract, I think it of little force. The respondent has been paid for the privilege that is now claimed. The consideration, as I have heretofore shown, was ample; and,

when a party has received payment for a privilege, I do not think it can resist the enforcement of that privilege on the mere ground that it cannot compel the other party to continue in its enjoyment.' We concur in this view."

Option contracts, whereby a party obligates himself, for a valuable consideration, to convey certain property, are of everyday occurrence. In none of them is there any obligation on the part of the would-be purchaser to make the purchase, that being discretionary with the party to buy. But the obligor, having received a valuable consideration, cannot be heard to defeat the contract because the obligations are not mutual, as is the case where the sole consideration is a promise for a promise. Pomeroy on Sp. Per. § 169; Willard v. Tayloe, 8 Wall. 557, 19 L. Ed. 501; Watts v. Kellar, 56 Fed. 1, 4, 5 C. C. A. 394, 397; Marthinson v. King, 150 Fed. 48, 51, 82 C. C. A. 360; Hoogendorn v. Daniel, 178 Fed. 765, 102 C. C. A. 213.

[3] In the instant case the plaintiff was necessarily compelled to buy all the "Al-Vista" cameras it needed to supply its customers from the defendant, as it alone, as the assignee and owner of all the patents under which they could be made, could manufacture them. Therefore, by necessary implication, the contract compelled the plaintiff to purchase from the defendant all these cameras which it required as long as the patents were alive. This is sufficient. Cold Blast Transp. Co. v. Kansas City Bolt & Nut Co., 114 Fed. 77, 52 C. C. A. 25, 57 L. R. A. 696; Loudenback Fertilizer Co. v. Tennessee Phosphate Co., 121 Fed. 298, 58 C. C. A. 220, 61 L. R. A. 402; Sterling Coal Co. v. Silver Spring B. & D. Co., 162 Fed. 848, 89 C. C. A. 520; Golden Cycle Min. Co. v. Rapson Coal Min. Co., 188 Fed. 179, 112 C. C. A. 95.

The fact that there is no limit to the time within which the contract is to cease does not vitiate it, in view of the facts here existing. In Pierce v. Tennessee Coal & Iron R. R. Co., 173 U. S. 1, 19 Sup. Ct. 335, 43 L. Ed. 591, the railroad company had obligated itself, for a valuable consideration, to give the plaintiff employment at such work as he could do at a certain salary per month, without specifying the length of time the employment was to continue. It thereafter discharged him. It was claimed that the contract was for a hiring from month to month; otherwise, being for an indefinite time, it was void. But the court construed it as being a contract of employment as long as he was unable to do full work and therefore the company was liable for a breach thereof when it discharged the plaintiff while he was still unable to do full work. The Supreme Court of Alabama, in construing the same contract, held that:

"The contract is sufficiently definite as to time, and bound the defendant to its performance so long as the plaintiff should be disabled by reason of the injuries he received, which, under the averment that he was permanently disabled, will be for life."

In that opinion the Supreme Court of the United States concurred. 173 U. S. 10, 19 Sup. Ct. 335, 43 L. Ed. 591. To the same effect is Smith v. Duluth, etc., Ry. Co., 60 Minn. 330, 62 N. W. 392.

[4] In the case at bar, the cameras being made under patents of the United States, the plaintiff after having assigned these patents, and sold all the dies and tools necessary to make them, could not manufacture them itself, nor could it secure them from any other

person during the life of the patents. It is therefore a reasonable construction of the contract, in view of the rule laid down in the Pierce Case, that it was limited to the life of the patents, for thereafter others could manufacture them, and plaintiff obtain cameras from them.

In McKell v. Chesapeake & O. R. R. Co., 175 Fed. 321, 330, 99 C. C. A. 109, 118 (20 Ann. Cas. 1097), the court held that such a contract was valid, saying:

"A more conclusive answer is that it should have been considered by the parties when they made their agreement whether it would impose too great a hardship upon them."

[5] It is also claimed that the plaintiff was estopped, but there is no such plea in the answer. Nor was there any proof to establish an estoppel. The allegation that the "Al-Vista" camera was imperfect can hardly be considered as a plea of estoppel. But, assuming that the defendant had amended its answer by pleading an estoppel, the court did not err in excluding evidence offered by the defendant that the "Al-Vista" camera was imperfect. For the reasons stated by the learned trial judge in excluding the evidence, this claim is untenable. He said:

"There is an allegation that the cameras were imperfect, inferior, and incomplete, and could not be successfully operated, used, or sold, and that, in order for defendant to manufacture and successfully dispose of said cameras to the trade, it became necessary for the defendant to make many changes and improvements in the construction of said cameras. That might have been necessary in order to sell to the trade other than the plaintiff; but, so far as the plaintiff was concerned, it was bound to take the cameras as they were made at first."

If the cameras purchased by the plaintiff were imperfect, the loss would fall upon it, and not on the defendant.

It is next claimed that the court erred in admitting the evidence offered by the plaintiff as to the measure of damages. The contention is that it was unsatisfactory, and that the books of the plaintiff ought to have been introduced, to show the exact cost of handling them for the trade. If the plaintiff's testimony as to the expenses of sale was unsatisfactory, the defendant had an opportunity to introduce evidence to rebut it. Nor was it necessary for the plaintiff to testify from his books as to the measure of damages. It appears from the record that the books of the plaintiff were in court at the trial, or, if not there, they could have been procured by a subpœna duces tecum, and defendant could have had them introduced, or, on cross-examination of plaintiff's witnesses on that point, have had them refer to the books. The testimony of plaintiff as to the damages was limited by the trial court to the profits on orders for the "Al-Vista" cameras which it had actually received before the institution of this action, but could not fill owing to defendant's refusal to furnish them, as it had agreed to do by its contract of December 2, 1908, less the expense connected with the sales. The defendant was permitted to show on cross-examination that there were overhead expenses, which had not been included by plaintiff's witnesses in estimating the expense of sale, and what these expenses were. It was also permitted, on cross-examination of plain-

216 F.—57

tiff's witnesses, to show what cameras were returned by customers as defective, and therefore no profit made on them. These facts were evidently considered by the jury in assessing the damages, as their verdict is for several hundred dollars less than the amount claimed by plaintiff's witnesses on their direct examination. The damages originally claimed by plaintiff were for $18,500; the damages claimed, after the court had limited them to the net profits on the cameras, for which the plaintiff had received orders from its customers, but could not fill owing to defendant's breach of the contract, as shown by the direct testimony of its witnesses, exceeded $1,500. But no doubt, after considering the overhead expenses and the conflicting evidence on that point, the jury assessed the damages at $1,287.50. Upon a motion for a new trial, the trial court approved that finding.

The record fails to show any error prejudicial to the defendant, and the judgment is therefore affirmed.