### BAKER v. MULROONEY.

(Circuit Court of Appeals, Eighth Circuit. April 29, 1920. Rehearing Denied July 15, 1920.)

No. 5491.

1. Corporations ⬯116—**Option for sale of stock not subject to rejection or withdrawal.**

A contract whereby an owner of mining stock, in consideration of $10 and other considerations, agreed to sell it to the other party, or any person such party might demand, on or before a specified date, was not a mere offer or authorization to sell, subject to withdrawal or rejection prior to formal acceptance, but was the grant of an irrevocable and exclusive option, conveying to the optionee a vested and valuable property right, which he was entitled to retain and enjoy during the period of the option.

2. Corporations ⬯116—**Optionee of stock entitled to purchase or sell to others.**

Under an option by which the optionor agreed to sell mining stock to the optionee or any persons he might demand, the optionee could, either alone or in association with others, purchase the property or sell the property to others, relying on the option to enable him to fulfill his obligations.

3. Corporations ⬯116—**Optionee selling stock entitled to difference in price.**

The holder of an option, selling the property to others at an advance in price, is the absolute owner of the difference between the price specified in the option and the price obtained by him.

4. Corporations ⬯121 (5)—**Optionor has burden of establishing surrender of option to purchase stock.**

One giving an option to purchase mining stock had the burden of establishing a surrender or relinquishment of the option by the optionee.

5. Corporations ⬯121 (5)—**Evidence insufficient to show abandonment of option by optionee to purchase stock.**

In an action involving the ownership of the proceeds of a resale of mining stock by an optionee in excess of the price specified in the option, evidence *held* insufficient to show an abandonment or surrender by the optionee of his rights under the option.

⬯For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**6. Corporations ☞116—Approval of stock optionee's contract with third person held not to make optionor a party thereto.**

Where an optionee of mining stock granted an option to a third party, providing for the deposit of the stock in escrow, accompanied by joint instructions executed by him and the original optionor, the execution by the optionor of a statement at the foot of the contract that he thereby approved it did not make him a party to the sale of the stock to such third person, and as such entitled to the price paid in excess of the price specified in his option, but merely indicated his assent to the provisions respecting the deposit of the stock and the instructions accompanying it.

**7. Corporations ☞116—Optionee of stock not required to accept option otherwise than by paying price.**

Under an option whereby an owner of mining stock agreed to sell it to the optionee, or any persons he might demand, on or before a specified date, for a sum payable in installments, the first of which was payable on the date specified for expiration of the option, the optionee was not obliged to do anything to show that he accepted the option, except to pay the price in accordance with its terms.

**8. Corporations ☞116—Stock optionee's rights not affected by intent to exercise on contingency.**

Where an optionee of mining stock granted an option to a third party, his rights under his option were not affected by the fact that he intended to comply therewith if the third party performed its contract, and not to comply therewith if the third party failed to perform, as he was under no liability to take the stock, but had a right to take it, if he so desired.

**9. Corporations ☞116—Validity of stock option not affected by financial condition.**

The validity of an option for the sale of mining stock is not affected by the fact that the optionee has not the money with which to exercise the option.

**10. Corporations ☞116—Stock option not enforceable for illegality or inequity.**

Where plaintiff, having an option from defendant for the purchase of mining stock, gave an option to a third person, with defendant's approval, providing for deposit of the stock in escrow, and the third person received the stock and deposited the entire purchase money, which could not be disposed of by either plaintiff or defendant without the consent of the other, there was nothing illegal or inequitable, preventing enforcement of plaintiff's option, on the theory that defendant had no security for the payment of the installments due it, as the purchase money paid by the third party took the place of the stock, and constituted better security than the stock.

**11. Corporations ☞116—Stock optionee within rights in delaying determination to exercise.**

Under an option for the purchase of stock on or before a certain date, with a provision for extension of the time in a certain contingency, the optionee was within his legal rights in putting off his determination to take the stock until the date as so extended.

**12. Corporations ☞116—Stock optionee's profits immaterial.**

That an optionee of mining stock made a large profit on a resale was immaterial, in a suit involving the ownership of such profits.

Appeal from the District Court of the United States for the District of Colorado; Robert E. Lewis, Judge.

Action by Benedict J. Baker against Patrick Mulrooney. From a judgment for defendant, plaintiff appeals. Reversed and remanded, with instructions.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

C. C. Dorsey, of Denver, Colo. (Gerald Hughes and R. L. Stearns, both of Denver, Colo., on the brief), for appellant.

Harvey Riddell, of Denver, Colo., for appellee.

Before HOOK and CARLAND, Circuit Judges, and VAN VAL-KENBURGH, District Judge.

CARLAND, Circuit Judge. Baker brought this action against Mulrooney for the purpose of having it determined that he was the owner and entitled to the possession of certain promissory notes or their proceeds, signed by the Western Chemical Manufacturing Company, hereafter called Chemical Company, aggregating the sum of $161,554, in the possession of the Colorado National Bank, of Denver, hereafter called bank, as escrow holder under joint escrow instructions from Baker and Mulrooney. The trial court made no formal findings of fact or conclusions of law, but wrote an opinion wherein it was decided that Baker was not the owner of the notes or the proceeds thereof, but that Mulrooney was. This ruling of the court is assigned as error.

The notes were given by the Chemical Company under the following circumstances: On December 13, 1917, Baker and Mulrooney executed the following instrument:

"This agreement, made this 13th day of December, 1917, by and between Patrick Mulrooney, of Denver, Colorado, hereinafter called 'seller,' and B. J. Baker, of Boston, Mass., hereinafter called 'purchaser,' witnesseth:

"That, in consideration of the sum of ten dollars ($10.00) and other good and valuable considerations, the receipt of which is hereby acknowledged, the seller hereby agrees to sell and deliver to the purchaser, or to any person or persons, corporations that the said purchaser may demand on or before April 1, 1918, 339,375 shares, more or less, of the stock of the Greenback Mining Company, a Utah corporation with a total capital stock of one million shares (1,000,000) of the par value of $1 per share, of which only six hundred thousand (600,000) are outstanding, for a total sum of $180,321, payable as follows:

| | |
|---|---:|
| April 1, 1918 | $ 75,000.00 |
| August 1, 1918 | 50,000.00 |
| Dec. 1, 1918 | 25,000.00 |
| March 1, 1919 | 30,321.00 |
| Total | $180,321.00 |

"Upon the payment of seventy-five thousand dollars ($75,000.00) in cash the purchaser shall be entitled to name the members of the board of the directors of Greenback Mining Company.

"This agreement shall bind in every particular the heirs, personal representatives and assigns of the parties hereto.

"In testimony whereof, the parties hereto have executed this agreement the day and year first above written. [Signed] B. J. Baker.
"Patrick Mulrooney.

"December 13, 1917.

"In giving this option it is understood that option given you on September 25, 1917, together with letter of acceptance of special arrangement, is hereby canceled by mutual agreement.

"In event the mine is not unwatered and ready for examination by April 1, 1918, the time will be extended until examination and sampling is completed and say fifteen days thereafter. [Signed] B. J. Baker.
"Patrick Mulrooney.

"Witness to both sets of signatures:
"Saede K. Durham."

On January 22, 1918, Baker made to the Chemical Company certain written alternate proposals relating to the acquisition by said Chemical Company of the stock of the Greenback Mining Company which he held under the above option, as well as the stock which he (Baker) owned. In the opening sentences of these proposals it was said:

"Confirming my conversation with your Mr. McDaniel, I beg to advise that I hold from Mr. P. Mulrooney a valid option to purchase, on or before April 1, 1918, 339,375 shares, more or less, of the stock of the Greenback Mining Company, a Utah corporation, with a total capital stock of 1,000,000 shares, of the par value of $1 per share, of which only 600,000 shares are issued and outstanding. I am the owner of 55,000 shares of the stock of the same company. * * *"

On January 28, 1918, pursuant to and in fulfillment of one of the proposals above mentioned, Baker entered into a written agreement with the Chemical Company whereby he granted to the Chemical Company a valid option to purchase and undertook to sell and deliver to it at the price of $1 per share, 396,875 shares of the stock of the Greenback Mining Company, consisting of the 55,000 shares which he then owned and the Mulrooney stock, covered by the option of December 13, 1917; the exact number of shares constituting the Mulrooney holding and covered by said option to Baker having by this time been ascertained to be 341,875. It is admitted that, although due diligence to that end was used, the Greenback mine was not unwatered and ready for examination by April 1, 1918, and that the examination and sampling thereof could not be and was not completed until April 25, 1918. By the terms, therefore, of the option between Baker and Mulrooney, May 10, 1918 became fixed as the date for the first payment under said option. The terms under the option granted by Baker to the Chemical Company were such that, if the latter availed itself of this option, ample funds would be provided with which to meet the installments of the purchase price payable to Mulrooney under the option to Baker. On April 25, 1918, the Chemical Company elected to avail itself of the option of January 28, 1918, and notified Baker of said election. On April 26, 1918, the Chemical Company, pursuant to the option of January 28, 1918, paid the full purchase price ($396,875), being $1 per share for all of the shares (396,875) covered by the option of January 28, 1918. Upon payment of the purchase price all of these shares were on said date delivered to the Chemical Company. The purchase price was paid by the Chemical Company in accordance with the terms of the option of January 28, 1918, to the bank, which during the pendency of the option held the stock in escrow. Of the purchase price paid $55,000 covered the 55,000 shares of which Baker was then the absolute owner, and $341,875 covered the 341,875 shares of Mulrooney stock, covered by the option of Mulrooney to Baker. Of the purchase price paid by the Chemical Company, Baker immediately offered to Mulrooney the sum of $180,321, being the total amount of the option price for the Mulrooney shares as specified in the option granted by Mulrooney to Baker. This offer Mulrooney refused, and also demanded $341,875, being the total amount paid by the Chemical Company for

said shares. Baker refused the demand of Mulrooney, and the entire purchase price paid by the Chemical Company, $396,875, remained for a time in the custody of the bank. On May 6, 1918, Baker prepared and was about to make formal tender to Mulrooney for at least the first payment of the option of December 13, 1917, when Mulrooney delivered to Baker the following writing:

"Denver, Colorado, May 6, 1918.

"Mr. B. J. Baker, Denver, Colorado—Dear Sir: You claim, as I understand, that a certain writing dated December 13, 1917, is an option contract between us relating to the sale of stock of the Greenback Mining Company, and you express your intention of this day tendering to me, in gold or other legal tender, the sum of $75,000 as the first payment thereunder. That you may not be required to do useless act, and to save you the trouble and expense of actually producing and tendering this money, this is to advise you that I do not regard said writing as governing our respective rights as to the money and notes arising from the sale of said stock to the Western Chemical Manufacturing Company, now in the Colorado National Bank, of Denver, Colorado, and that I would refuse such tender, if made. You may regard this writing as the equivalent of an actual tender to me this day of said sum and my refusal thereof. Very truly yours, Patrick Mulrooney."

On May 8, 1918, Baker and Mulrooney entered into a written agreement, pursuant to which Baker withdrew from the fund in the bank $55,000, being the amount of the purchase price paid by the Chemical Company for Baker's own stock, and Mulrooney withdrew $180,121, being the price agreed to be paid by Baker for the Mulrooney stock under the option from Mulrooney to Baker. The remainder of said fund $161,554, which had been paid in the form of demand notes by the Chemical Company, was left and still remains with the bank, awaiting the determination of the respective rights of the parties thereto. The division of the purchase price as thus indicated was made without prejudice to the claims or contentions of either party. From this statement of the case the respective claims of Baker and Mulrooney to the fund in question plainly appear. Baker claims that the sale of the so-called Mulrooney stock was made by him to the Chemical Company under and by virtue of his option with Mulrooney, and therefore that he is entitled to the fund in controversy, which represents the profit which would accrue to him by the sale of the stock to the Chemical Company over and above what he had agreed to pay Mulrooney under the option of December 13, 1917. Mulrooney claims the fund on the theory that the option of December 13, 1917, was (a) without consideration; (b) void for uncertainty; (c) void on account of relationship of parties, father-in-law and son-in-law; (d) physical and mental condition of Mulrooney, which rendered him unable to make a contract; (e) execution of contract obtained by fraud, consisting of false representations; (f) that Baker abandoned and surrendered his option from Mulrooney by entering into the contract with the Chemical Company and by the negotiations leading up to the same, and therefore the sale of the stock to the Chemical Company was a direct sale by Mulrooney and Baker of their respective shares, entitling each to receive the full purchase price thereof.

All the defenses above named, except the last, were either abandoned at the trial, unproved, or decided adversely to Mulrooney, and will receive no further consideration. The ruling of the court as to the cross-complaint is not before us. The trial court sustained the defense last named, and in so doing we are of the opinion that said court failed to appreciate the full legal status of the option given by Mulrooney to Baker, and made a serious mistake in the consideration of the evidence which it is claimed showed an abandonment of the same. The legal character of an option contract, and the way it differs from a mere offer, is stated in James on Option Contracts as follows:

"An option to purchase is a contract supported by a consideration, or in some jurisdictions, a writing under seal, by which one party, called optionor, sells to another party, called optionee, the right at the election of the latter to purchase certain described property for the price and upon the terms and conditions of the option contract." Section 101, p. 2.

"The option contract, however, is completed upon its execution and delivery and payment or tender of the consideration, or the performance of the act which constitutes the consideration, for the option. No other act is necessary on the part of the optionee to continue the binding effect of the option contract during the time limit, unless, of course, the option contract otherwise provides. * * * A mere unaccepted offer is nudum pactum. An option contract, even before election and notice, is not a nude pact." Section 103, p. 7.

"An offer may be withdrawn by the party making it at any time before its unconditional acceptance by the party to whom it is made. * * * It is otherwise with an option contract. Such contract, as we have seen, is supported by a consideration, and by virtue of this fact the optionor may not withdraw or revoke the option contract during its time limit. * * * The rule with reference to option contracts is that, upon payment of the consideration for the option and the signing of the option contract, it becomes an executed contract for the sale of an option to purchase, and thus is irrevocable by the optionor during the time limit." Section 703, p. 263.

[1-4] These principles are fully supported by the authorities, among which are Conley Camera Co. v. Multiscope & Film Co., 216 Fed. 892, 896, 133 C. C. A. 96 (8th Circuit); Willard v. Taloe, 8 Wall. 557, 19 L. Ed. 501; Watts v. Kellar, 56 Fed. 1, 5 C. C. A. 394; Marthinson v. King, 150 Fed. 48, 82 C. C. A. 360; Hoogendorn v. Daniel, 178 Fed. 765, 102 C. C. A. 213; Frank v. Schnuettgen, 187 Fed. 515, 109 C. C. A. 281. The authorities above cited establish the proposition that the option from Mulrooney to Baker was not a mere offer or authorization to sell, which prior to formal acceptance might be withdrawn or revoked at the will of Mulrooney, but was in fact the grant of an irrevocable and exclusive option, not subject to revocation or withdrawal by the optionor, but constituting a vested and valuable property right then and there definitely conveyed to the optionee, and which he was entitled to retain, possess, and enjoy during the entire period specified in the option, and that the vested and irrevocable right, of which Baker had thus become the absolute owner, was of such a nature that in its exercise he could either (a) himself or in association with others purchase the optioned property, or (b) sell or agree to sell the optioned property to others at such price and

upon such terms as he might see fit, relying upon the irrevocable option which Mulrooney had granted him to enable him to fulfill whatever obligation to others he might in that respect assume, and, in the event of such a sale to others, the difference between the price at which Mulrooney had optioned the property to Baker, and the price at which Baker might sell it to others whatever that difference might be, would belong to Baker absolutely. The burden of establishing the surrender or relinquishment by Baker of the vested right conveyed by the option of December 13, 1917, rested upon Mulrooney.

"The question of abandonment is one of fact, but what facts amount to abandonment is a question of law. Proof of conduct constituting abandonment must be positive, unequivocal, and inconsistent with the option contract. The burden of proof is on the optionor." James on Option Contracts, § 710, p. 280; Manhattan Life Insurance Co. v. Wright, 126 Fed. 82, 61 C. C. A. 138 (8th Circuit) ; Wilson v. Colorado Mining Co., 227 Fed. 721, 142 C. C. A. 245 (8th Circuit).

[5] A careful consideration of the evidence as to what occurred between the grant of the option by Mulrooney and the making of the contract between Baker and the Chemical Company satisfies us that Mulrooney failed completely to show an abandonment by Baker during that time of his rights under the option. Baker wrote Mulrooney on January 5, 1918, a letter wherein he referred to the fact that the Chemical Company was considering the purchase of the Greenback property, and in reference thereto stated:

"Should they want option to purchase the Greenback property, I will insist that they make payment at times and in sufficient amounts to take care of the payments due you under my option."

Baker testified that on January 19th or 20th he, McDaniel (representing the Chemical Company) and Mulrooney had a conversation at Denver, and in this conversation Mulrooney told McDaniel that Baker had an option from him (Mulrooney), and that anything that was done would have to be done with Baker. Mulrooney, when upon the witness stand, was asked about this conversation, and testified as follows:

"Q. And at the same time didn't you say to Mr. McDaniel, in the presence of Mr. Baker: 'Yes; I will help put it through in every way, but it is altogether up to Mr. Baker; he has an option on my interest, and I will not go around him'? A. That is correct. At all times it was up to him."

We find nothing in the contract with the Chemical Company tending to show that the Mulrooney option had been abandoned, or that it was intended by the contract to abandon the same. It is incorrect to speak of this contract as one between Baker, Mulrooney, and the Chemical Company. The contract itself declared who the parties were who made it. It commences with the following language:

"Memorandum of agreement, made in duplicate at Denver, Colorado, this 28th day of January, 1918, by and between Benedict J. Baker, of Boston. Massachusetts, hereinafter called the 'grantor,' party of the first part, and the Western Chemical Manufacturing Company, a Colorado corporation, hereinafter called the 'grantee,' party of the second part."

The parties named above alone executed the contract before witnesses. At the foot of the contract, after the signatures of the parties and witnesses, appears this statement:

"In consideration of the execution of the foregoing agreement by the Western Chemical Manufacturing Company, I hereby approve the foregoing contract at Denver, Colorado, this 28th day of January, 1918.
"[Signed]  P. Mulrooney."

[6] When the language of the contract is examined, the object of the Mulrooney approval appears clear. He was not a party to the sale of the stock as seller, but the contract itself, and Exhibit A, attached thereto, contained provisions providing for the deposit of the stock in escrow with the bank during the life of the option, and also contained what should be the joint instructions by Mulrooney and Baker to the bank when the stock should be deposited. The deposit of the stock and the instructions accompanying the same required the consent of Mulrooney, and this was secured by his approval of the contract. The contract was entirely consistent with the Mulrooney option, and was made pursuant and in fulfillment of the written proposal hereinbefore quoted, which contained a direct reference to the option. The evidence as to the events following the execution of the contract with the Chemical Company does not show or tend to show that Baker supposed that the option of December 13, 1917, had been abandoned. The point is made that on January 28, 1918, after the delivery of the shares of stock to the bank, Baker presented to Mulrooney, and asked the latter to sign, a statement which in substance was an acknowledgment by Mulrooney that of the proceeds received from the Chemical Company for the stock, he (Mulrooney) was only entitled to the price fixed by the option given to Baker; also that on March 12, 1918, Baker presented a statement to Mulrooney, and asked the latter to sign the same, which for all practical purposes was an acknowledgment that he (Mulrooney) was only entitled to receive out of the proceeds above mentioned, the price fixed by the option, although its principal object seems to have been to get Mulrooney's consent to take the note of the Chemical Company in part payment of the amount to be paid under the option; also that on March 18, 1918, Baker wrote Mulrooney a letter, wherein he asked Mulrooney if he had signed the former statements, and again asking Mulrooney to write him (Baker) concerning the division of the proceeds; also that on April 26, 1918, Baker again attempted to induce Mulrooney to divide the proceeds of the sale of the stock on the basis of the option of December 13, 1918, all of which requests were refused by Mulrooney. We are unable to assign any reasons why these attempts by Baker to have Mulrooney declare his understanding of the terms of the option and Mulrooney's refusal so to do had any evidential force to show that the parties considered the option abandoned. Baker was not doing then anything different than he is doing now; neither was Mulrooney. If the evidence is to be considered material at all, it shows that Baker at the time indicated claimed to have acted under the option in making the sale of the stock to the Chemical Company.

[7-12] The trial court seemed to base its judgment upon the theory that the option contract was nothing more than an offer. The court said there was no proof that the Western Chemical Company or Baker at any time notified Mulrooney that the company or Baker was ready or had the right to purchase the stock under the option. So far as this proposition is concerned, the Chemical Company was in no wise concerned with the option between Mulrooney and Baker, and Baker had nothing to do under the option, except to make the payments as agreed. Mulrooney had for a consideration bound himself to sell the stock to Baker at a certain price, payable in accordance with the terms of the option. Baker was not obliged to do anything to show that he accepted the option. There was nothing to accept. Baker could lawfully agree to sell the Chemical Company the Mulrooney stock, whether he owned it at the time of the agreement or not. It was sufficient for him, and also for the Chemical Company, if he was ready to deliver the stock at the time mentioned in the contract with the Chemical Company. The liability of Baker to take the stock under the Mulrooney option was immaterial. He did not agree to take it in the option, yet he had the right to take it if he so desired under its terms. So that it cannot be said that Baker was playing fast and loose with Mulrooney; that is, to comply with the option if the Chemical Company performed its contract, and not comply with it if the Chemical Company failed to perform. It is also immaterial, so far as the validity of the option is concerned, whether Baker was a millionaire or was insolvent. If the purchase price was paid according to the terms of the option, Baker was entitled to the stock; if it was not paid, the option ceased to exist. In the commercial world these options are taken as a general rule by men who have not the money to pay for the property sold, but intend to make it by a resale. Mulrooney by the transaction in question received all the purchase price named by him in the option, and received it long before the time fixed for the payment of the same.

It is said that Mulrooney, by virtue of the transaction with the Chemical Company, lost possession of his shares, which he would have had the right to hold until the purchase price was paid, and that although the Chemical Company had paid the full purchase price, Baker need not pay to Mulrooney the price agreed upon under the option until the time therein fixed, and that Mulrooney would in the meantime have no security for the payment of the installments. This question ignores the conditions of the purchase by the Chemical Company. The whole purchase price paid by the Chemical Company took the place of the stock in the bank, and could not be disposed of by either Baker or Mulrooney without the consent of the other. Mulrooney, therefore, had better security than the stock itself. We can see nothing illegal or inequitable in this situation. Baker had the right, so far as his option is concerned, to put off his determination to take the stock under the option until May 10, 1918, and even if the evidence shows that Baker was not certain whether he would take the stock under the option until he was certain that the Chemical Company would take the stock under its option, this fact

is of no importance. Baker was doing nothing but what he had a legal right to do. That he made a large profit has nothing to do with the case, except it no doubt was the cause of this lawsuit. All the evidence has been considered. A large part of the same is irrelevant and immaterial to the issues involved. The part that is material cannot be detailed within the limits of this opinion. It falls far short of showing that Baker at any time abandoned his rights under his option. On the contrary, it shows that the sale by Baker to the Chemical Company was made pursuant to his option granted by Mulrooney, and that in consequence he is the owner of the fund on deposit in the bank.

The decree below is reversed, and the case remanded, with instructions to enter a decree accordingly.